UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
KAREN CLOSE, GIOVANNI and DIANA
PICCOLINO, individually and as parents of JC and
AP, and CRAIG STERNSCHEIN, individually and
as legal guardian of BS, whose names have been
redacted due to the sensitive nature of these claims,

                                          Plaintiffs,

            - against -

BEDFORD CENTRAL SCHOOL DISTRICT,
KEITH ALLEYNE, BRETT MILLER, JASON
SPECTOR, JOEL ADELBERG, DEBORAH
DORMANDY, EDWARD ESCOBAR, and
DANIEL MULVEY,

                                   Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-4595 (CS)

Appearances:

Andrew C. Laufer
Law Office of Andrew C. Laufer, PLLC
New York, New York
*Counsel for Plaintiffs*

Lewis R. Silverman
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss.  (ECF No. 42.)  For the following

reasons, the motion is GRANTED.

I.      **BACKGROUND**

      For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiffs in their Amended Complaint.  (*See* ECF No. 40 ("AC").)

A.    **Facts**

Defendants Keith Alleyne, Brett Miller, Jason Spector, Joel Adelberg, Deborah Dormady, Edward Escobar, and Daniel Mulvey (together, the "Individual Defendants") were employees of the Bedford Central School District (the "District" and together with the Individual Defendants, the "Defendants") during the events relevant to this lawsuit. (*See* AC ¶¶ 4-5.)[1] Plaintiffs are JC, AP, and BS (together, the "Infant Plaintiffs") – three minors with autism who were students at Fox Lane High School ("FLHS") in the District – and their parents or legal guardians Karen Close, Giovanni and Diana Piccolino, and Craig Sternschein. (*See id.* ¶¶ 1-3, 17-31.)

Starting in the fall of 2021, the Infant Plaintiffs were verbally and sexually harassed by certain general education students who took photographs of them in the bathroom while their pants were down. (*Id.* ¶ 32.) On Friday, March 11, 2022, a student informed special education teacher Mary Downes – a non-party – and Defendant Alleyne[2] that unidentified students had taken pictures and videos of JC and AP in the bathroom with their pants down, (the "March 11 Incident"). (*Id.* ¶¶ 33-34.) On Monday, March 14, 2022, Downes and other special education staff implemented new procedures for supervision of the boys' bathroom so that similar incidents would not recur. (AC Ex. A ("Kroll Report") at 9; *see* AC ¶ 73.) On March 17, 2022, Downes informed Close and Diana Piccolino about the "hostile environment" to which JC and AP were subjected. (AC ¶ 34.)

---

[1] Defendants note that Dormady was incorrectly sued as "Dormandy." (*See* ECF No. 44 ("Ds' Mem.") at 1.) The Court will use the proper spelling of her surname throughout this Opinion.

[2] Alleyne was a Dean of FLHS. (AC ¶ 35.)

Giovanni Piccolino left a voicemail for Defendants Miller, Alleyne and Dormady,[3] informing them that AP was involved in the March 11 Incident. (*Id.* ¶ 35.) Miller acknowledged receipt of the voicemail on March 18, 2022 and communicated that he had launched an investigation into the March 11 Incident, which included interviewing various students who witnessed and were involved in the incident, and reviewing footage captured by cameras located throughout FLHS. (*Id.* ¶ 36.)

On March 20, 2022, the Piccolinos gave a statement about the March 11 Incident to Detective Keane of the Bedford Police Department, based on information they received from Miller, Alleyne, and Dormady. (*Id.* ¶ 37.) Close and Giovanni Piccolino also spoke with Defendant Spector, the Assistant Principal of FLHS, who assured them that an official police investigation concerning the March 11 Incident was underway. (*Id.* ¶ 38.) Soon after, Miller "acknowledged" that the District had "failed to properly communicate and rectify the incidents of sexual harassment and bullying that occurred on or before March 11, 2022." (*Id.* ¶ 39.) Plaintiffs maintain, without further elaboration, that Alleyne, Miller, Spector, Adelberg, Dormady, Escobar, and Mulvey[4] were aware of the sexual harassment and bullying to which the Infant Plaintiffs were subjected and did nothing to stop it. (*Id.* ¶ 40).[5]

---

[3] Miller was principal of FLHS and Dormady was Director of Special Education. (AC ¶ 35.)

[4] Adelberg was Superintendent of FLHS. (AC ¶ 44.) Escobar and Mulvey are not identified in the body of the AC, but an attached investigative report states that Escobar was Director of Pupil Services and the District's Dignity Act Coordinator and that Mulvey was a Dean of FLHS. (*See* Kroll Report at 9.)

[5] Plaintiffs allege, upon information and belief, that Miller, Alleyne, and Dormady "received no further discipline" in connection with their inaction. (AC ¶ 41.) As no discipline is specified, it is not clear to what "further" discipline Plaintiffs refer. One cannot tell from the AC if Plaintiffs meant to allege that Miller, Alleyne, and Dormady were not disciplined at all, that they received insufficient discipline or that other Individual Defendants were disciplined.

At some point in March 2022, the Piccolinos discovered that photographs of the Infant Plaintiffs in the bathroom were circulating across social media platforms. (*Id.* ¶ 42.) Close and the Piccolinos complained about the continued harassment and bullying to Miller, who informed them that he would begin an investigation. (*Id.* ¶ 43.) Close and Giovanni Piccolino then emailed Adelberg, Miller, Spector, Dormady, and Escobar a copy of a Dignity for All Students Act ("DASA") Harassment and/or Bullying Complaint form and formally requested that they explore out-of-district special education programs for AP and JC. (*Id.* ¶ 44.)

On March 24, 2022, the Piccolinos met with Miller, Dormady and Bedford Police Officer Chris Colello and were assured that the inappropriate behavior and harassment targeted at AP would stop and that new bathroom protocols were being implemented to prevent similar bullying incidents from occurring in the future. (*Id.* ¶ 45.) Those protocols consisted of male aides who would accompany the students to the boys' bathroom at 9:00 a.m. and at 2:00 p.m. each day, which Plaintiffs contend "result[ed] in a loss of freedom and independence" for JC, AP, and BS. (*Id.* ¶ 47.) Miller again acknowledged the District's lack of communication and failure "to notify the parents of the [March 11 Incident] immediately when it occurred." (*Id.* ¶ 46.)

The District committed to investigating the March 11 Incident, (*id.* ¶ 48), but because of a lack of information from the Defendants, on March 30, 2022 Giovanni Piccolino purchased a cellphone and created a flyer offering a $1,000 dollar reward for information about the March 11 Incident, (*id.* ¶ 49). Within hours of distribution of the flyers throughout FLHS and on social media, anonymous text messages and screenshots of pictures taken of AP, JC, and BS were sent to the cellphone. (*Id.* ¶ 50.) The next day, the cellphone was provided to Detective Keane for further investigation and to Miller, Adelberg and Dormady in the hopes that the individuals who had taken the pictures could be identified. (*Id.* ¶ 51.) According to Plaintiffs, those students

were "not fully disciplined or punished" in connection with the March 11 Incident, other than being questioned by Miller, and no involved student was "disciplined immediately" during the investigation.  (*Id.* ¶ 52-53.)

On March 31, 2022, Dormady sent a letter to the families of special education students detailing the March 11 Incident, (*id.* ¶ 54), and shortly thereafter Adelberg sent a similar letter to the entire District, prompting the Board of Education (the "Board") to become involved, (*id.* ¶ 55).  Close, the Piccolinos, and Sternschien contacted Miller on several occasions to voice concerns as to AP, JC, and BS, and to obtain information as to the investigation into the March 11 Incident and its resolution.  (*Id.* ¶ 56.)  On each such occasion, Miller advised them that the investigation was still underway and that he was unable to identify the students who had taken pictures of JC, AP, and BS based on student interviews.  (*Id.* ¶ 57.)  Spector, Adelberg and Dormady assured Plaintiffs that if there were any further problems, they would be addressed.  (*Id*. ¶ 58.)  Plaintiffs expressed their outrage and discomfort with the language being used to describe the March 11 Incident, as well as the lack of communication regarding the investigation, (*id.* ¶ 59), resulting in Miller promising that the bullying and harassment "would be taken care of," (*id.* ¶ 60).  Plaintiffs were never informed of what additional steps, if any, were taken in response to the behavior of the students who participated in the March 11 Incident.  (*Id.* ¶ 61.)

On April 6, 2022, the Board held a regularly scheduled meeting at which Close and Giovanni Piccolino spoke about the March 11 Incident, (*id.* ¶ 62), resulting in a unanimous Board vote to retain a third-party firm to investigate the Incident, (*id.* ¶¶ 63-64).  The firm that was retained – Kroll – did not begin its investigation until July 2022.  (*Id.* ¶ 64.)[6]  The investigation revealed that on or about March 21, 2022, Miller, Spector, Escobar and Mulvey had

---

[6] Adelberg and Dormady had retired in or about June 2022.  (AC ¶ 64.)

received handwritten statements from three students stating that they were involved in photographing the Infant Plaintiffs in the March 11 Incident. (*Id.* ¶ 65.)[7] Plaintiffs allege that the existence of these statements was never disclosed to them, (*id.* ¶ 66), and according to the Kroll investigation, Miller and Spector believed that the handwritten statements were not "sufficient enough evidence to notify parents," (*id.* ¶ 67). Plaintiffs allege upon information and belief that the District informed Kroll that it lacked a formal policy "spelling out how much evidence would be sufficient to notify parents their children were potential victims of student misconduct." (*Id.* ¶ 69.)

The Kroll investigation also determined that a similar bullying incident may have occurred in or about December 2021. (*Id.* ¶ 68.) Kroll reviewed the District's policies and procedures and determined that the March 11 Incident may have violated the District's DASA policy, (*id.* ¶ 70; *see* Kroll Report at 30), as well as its non-discrimination and anti-harassment policy, which incorporates Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, (AC ¶ 71; Kroll Report at 31), and that the Infant Plaintiffs may have been harassed in a way that would unreasonably interfere with their wellbeing, (AC ¶ 72; Kroll Report at 33).

The Kroll investigation concluded that

> [t]he FLHS special education staff should be applauded for the prompt steps it took after receiving the Whistleblower's report of misconduct on March 11th to strengthen the protocols around the supervision of special education students in the boys' bathroom to ensure similar acts affecting their security and privacy would not recur. As described in this report, however, the FLHS administration's investigation into who was responsible for engaging in the misconduct was deficient in multiple respects, including lapses in leadership, failure to take contemporaneous notes of the investigation resulting in materially erroneous investigative judgments, and inaccurate and misleading communications with the

---

[7] Paragraph 65 of the AC states that the March 11 Incident occurred on March 21, 2022, but this appears to be a typographical error. (*Compare* AC ¶ 65 *with id.* ¶ 63.)

Superintendent, the Board, and the FLHS special education community. Kroll recommends administration and staff receive training on the fundamentals of conducting effective investigations and communicating investigative findings to key constituencies. Moreover, the absence of a formal [District] policy on parental notification contributed to the administration's missteps. Kroll therefore recommends the district adopt a notification policy more in line with the policy in neighboring school districts in Westchester County that will ensure parents receive prompt notification when their children are involved, either as a victim or accused, in serious or repeated incidents of harassment, bullying, or discrimination.

(AC ¶ 73; Kroll Report at 45.)

Plaintiffs allege upon information and belief that while the District may have disciplined the three students who gave written statements about the March 11 Incident, nothing else was done to address the hostile environment faced by AP, JC, and BS, or to otherwise discourage students from bullying and harassing them. (AC ¶ 74; *see id.* ¶ 65.) As a result of the March 11 Incident, the Infant Plaintiffs all experienced increased stress, became short-tempered, had difficulties sleeping, became argumentative and angry, were less responsive at home, and refused to have contact with any of their friends during the remainder of the semester. (*Id.* ¶ 76.)

### B.    **Procedural History**

On June 17, 2022, Plaintiffs served the District with a Notice of Claim as required by N.Y. Gen. Mun. Law. § 50-e, and Defendants held § 50-h hearings with Close, the Piccolinos, and Sternschein in October 2022. (*See* AC ¶¶ 13-14.)

Plaintiffs filed their initial Complaint on June 1, 2023. (*See* ECF No. 1.) On August 10, 2023, Defendants filed a pre-motion letter in anticipation of a motion to dismiss, (ECF No. 37), to which Plaintiffs responded on September 1, 2023, (ECF No. 39). I held a pre-motion conference on September 8, 2023, at which I granted Plaintiffs leave to amend and set a briefing schedule. (*See* Minute Entry dated Sept. 8, 2023.)

7

The operative complaint, Plaintiffs' AC, was filed on October 12, 2023, and asserts claims for: (1) negligence under state law against all Defendants ; (2) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against all Defendants; (3) violation of § 504 of the Rehabilitation Act, ("Section 504"), 29 U.S.C. § 794 against the District; (4) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, against the District; (5) violation of § 296(6) of the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(6), against the Individual Defendants; (6) violation of New York Civil Rights Law §§ 40-c and 40-d, against all Defendants; (7) negligent hiring, training, and supervision under state law against the District; (8) violation of the Family Education Rights and Privacy Act, ("FERPA"), 20 U.S.C. § 1232g *et seq.*, against all Defendants; (9) violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, against all Defendants ; and (10) violation of § 296 of the NYSHRL, N.Y. Exec. Law § 296, against all Defendants. (*See* AC ¶¶ 78-148.) Plaintiffs seek several remedies, including monetary damages, punitive damages, costs and expenses, attorney's fees and declaratory judgments concerning the alleged FERPA and IDEA violations. (*Id.* at 22-23.)

The instant motion followed. (*See* ECF No. 42.)[8]

## II.    LEGAL STANDARDS

### A.    Rules 12(b)(4) and 12(b)(5)

"Rule 12(b)(4) allows for the dismissal of a complaint for 'insufficient process.'" *Abram v. Town of Cheektowaga Police Dep't*, No. 18-CV-1267, 2020 WL 3513677, at *2 (W.D.N.Y.

---

[8] As Defendants point out, (*see* ECF No. 46 ("Ds' Reply") at 1 n.1), Plaintiffs' Opposition, (*see* ECF No. 45 ("Ps' Opp.") exceeds by two pages the page limitation for memoranda of law in Item 2.B.i of my Individual Practices. I will nevertheless consider Plaintiffs' arguments on the merits, but I caution Plaintiffs' counsel to take greater care with his submissions moving forward.

June 29, 2020) (quoting Fed. R. Civ. P. 12(b)(4)).[9]  "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 n.8 (E.D.N.Y. 2021) – *i.e.*, such "[o]bjections . . . must identify substantive deficiencies in the summons, complaint, or accompanying documentation," *Abram*, 2020 WL 3513677, at *2; *see Jackson v. City of N.Y.*, No. 14-CV-5755, 2015 WL 4470004, at*4 (S.D.N.Y. June 26, 2015) ("[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.").  Where "movants do not assert noncompliance with Rule 4(b), dealing with the content of the summons, or otherwise challenge the form of the process . . . their motion is not governed by Rule 12(b)(4)." *Jackson*, 2015 WL 4470004, at *4.

"[In] contrast, a Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Haidon v. Budlong & Budlong, LLC*, 318 F. Supp. 3d 568, 575 (W.D.N.Y. 2018).  Put differently, "Rule 12(b)(5) permits a party to move to dismiss [a] complaint for insufficient service of process." *Grp. One Ltd.*, 523 F. Supp. 3d at 332 (citing Fed. R. Civ. P. 12(b)(5)); *see Jackson*, 2015 WL 4470004, at*4 ("Rule 12(b)(5) governs the defense of insufficient service of process.").  "When a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff bears the burden of establishing that service was sufficient." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021).  In considering such a motion, "the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Id.*; *see Grp. One Ltd.*, 523 F. Supp. 3d at 332 ("In considering a Rule 12(b)(5) motion to dismiss for

---

[9] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and alterations.

9

insufficient service of process, a court must look to matters outside the complaint to determine whether it has jurisdiction.").

Defendants have moved to dismiss the AC in part pursuant to Rule 12(b)(4).  (*See* ECF No. 42 at 1 (moving for an Order dismissing the AC with prejudice "based on . . . improper service of process on Certain Defendants" and citing Rule 12(b)(4).)  But as their motion papers make clear, (*see generally* Ds' Mem.; Ds' Reply), they "do not assert noncompliance with Rule 4(b), dealing with the content of the summons, or otherwise challenge the form of the process; therefore their motion is not governed by Rule 12(b)(4)," *Jackson*, 2015 WL 4470004, at *4. Instead, their arguments hinge on the "mode of delivery or the lack of delivery of the summons and complaint" – namely "insufficient service of process."  *Abram*, 2020 WL 3513677, at *2. As such, Rule 12(b)(5) governs the portion of their motion concerning service of process.  *See Grp. One. Ltd.*, 523 F. Supp. 3d at 332 n.8 ("Because this case does not address compliance with Rule 4(b) – the content of the summons or the form of the process – the Court analyzes Defendants' motion to dismiss for insufficient service of process under Rule 12(b)(5) only."); *Haidon*, 318 F. Supp. 3d at 575 ("Although Defendants have styled their motion to dismiss for insufficient process under both Rules 12(b)(4) and 12(b)(5) . . . Defendants' argument that Plaintiff did not timely or properly effect service of process does not identify substantive deficiencies in the summons, complaint or accompanying documentation; thus, their motion is governed by Rule 12(b)(5).").[10]

---

[10] The Court may consider Defendants' arguments under Rule 12(b)(5) despite their incorrect citation of Rule 12(b)(4), as that mistake has resulted in no prejudice to Plaintiffs, who, like Defendants, have framed their process arguments around the method of service rather than its form.  (*See* ECF No. 44 ("Ps' Opp.") at 32-33); *In re Teligent Servs., Inc.*, 324 B.R. 467, 471 n.2 (Bankr. S.D.N.Y. 2005) (The substance of [the] motion arises under Rule 12(b)(5), which is the proper provision for challenging the mode of delivery or the lack of delivery of the summons

**B.**     <u>**Rule 12(b)(6)**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

---

and complaint.  The citation to the wrong subsection of Rule 12, however, has not resulted in any damage to Plaintiff and the motion papers will be deemed corrected."); *Bath v. Am. Express Co.*, No. 19-CV-606, 2019 WL 2607020, at *6 (D. Colo. 2019) ("Though [defendant] moves for dismissal under Rule 12(b)(4) for insufficient process, its arguments relate to the mode and delivery of process, rather than the sufficiency of the summons.  Therefore, this court finds that it is more appropriate to consider [defendant's] arguments regarding improper service pursuant to Rule 12(b)(5) as a challenge to the sufficiency of service of process."), *report and recommendation adopted*, 2019 WL 2602505 (D. Colo. 2019); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (4th ed. 2024) ("Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.")).

11

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

While "[d]ocuments outside of the pleadings are not generally considered in the context of a motion to dismiss," "a complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Noel v. Wal-Mart Stores, E. LP.*, 764 F. App'x 17, 19-20 (2d Cir. 2019) (summary order); *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

As such, the Court may consider the Kroll Report that Plaintiffs attached as an exhibit to the AC. *See, e.g.*, *BYD Co. Ltd. v. VICE Media LLC*, No. 21-1097, 2022 WL 598973, at *3 n.4 (2d Cir. Mar. 1, 2022) (summary order) ("We may consider both the . . . Article and the . . . Report because both documents were attached as exhibits to the Complaint."); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 167 n.1 (E.D.N.Y. 2019) (on a Rule 12(b)(6) motion "[t]he Court also considers exhibits attached to the complaint, including the report of the Onondaga County District Attorney's Office").

## III.    DISCUSSION

Defendants have moved to dismiss Plaintiffs' five federal claims – under the Equal

Protection Clause, Section 504, the ADA, FERPA and the IDEA – and argue that because those

claims substantively fail, this Court should not exercise supplemental jurisdiction over Plaintiffs'

remaining state law claims.  (*See generally* Ds' Mem.)  They also maintain that the claims

against Defendants Miller, Adelberg, Dormady and Escobar independently fail because Plaintiffs

never effectuated proper service on those four individuals.  (*See id.* at 22-24.)

### A.    Equal Protection Claim

"The Equal Protection Clause is essentially a direction that all persons similarly situated

should be treated alike."  *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6

(W.D.N.Y. Mar. 20, 2019).  It "does not mandate identical treatment for each individual."  *Green*

*v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016).

> Although the prototypical equal protection claim involves discrimination against
> people based on their membership in a vulnerable class, the Second Circuit has
> long recognized that the equal protection guarantee also extends to individuals
> who allege no specific class membership but are nonetheless subjected to
> invidious discrimination at the hands of government officials.

*Lopes v. Westchester Cnty.*, No. 18-CV-8205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30,

2020).  Where a plaintiff is not a member of a constitutionally protected class,[11] he "must show

---

[11] Plaintiffs claim that because the Infant Plaintiffs are "non-verbal autistic individuals, there is no question that [they] are within an identifiable unique class and are not required to demonstrate the requirements under a 'class of one' analysis." (Ps' Opp. at 22.)  They are incorrect.  As I explained at the pre-motion conference, (*see* Minute Entry dated Sept. 8, 2023), disability is not a suspect classification under the Equal Protection Clause and any equal protection claim pursued by Plaintiffs would necessarily be analyzed as a class of one claim, *see, e.g.*, *Chick v. County of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013) (summary order) (affirming district court's determination that plaintiff's Equal Protection "claim that he was discriminated against based on his alleged disability . . . was not cognizable" because "disability is not a suspect classification under the Equal Protection Clause . . . ."); *Syfert v. City of Rome*, No. 19-

13

both that he was treated differently than other persons who were similarly situated and that such

differential treatment was either without rational basis (a class of one claim) or was motivated by

an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Phillips v.

City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *6 (S.D.N.Y. Sept. 24, 2018).

A class-of-one plaintiff must plausibly allege that he "has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in

treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires that he plead

"an extremely high degree of similarity" to proposed comparators. *Ruston v. Town Bd. for Town

of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

> The plaintiff must establish that [he] is *prima facie* identical to a comparator by
> showing that: (i) no rational person could regard the circumstances of the
> plaintiff to differ from those of a comparator to a degree that would justify the
> differential treatment on the basis of a legitimate government policy; and (ii) the
> similarity in circumstances and difference in treatment are sufficient to exclude
> the possibility that the defendants acted on the basis of a mistake.

*Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220, at *2 (2d Cir. June 15, 2023) (summary

order); *see Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y. 2017).

Rather than identify similarly situated comparators, Plaintiffs insist that the suggestion

that they must do so "is incredibly noxious," (Ps' Opp. at 21), because non-verbal students with

autism are a unique class, (*see id.* at 21-22). In so doing, Plaintiffs simultaneously fail to

recognize that disability is not a protected class under the Equal Protection Clause, *see* note 11

---

CV-775, 2022 WL 2180455, at *10 (N.D.N.Y. June 13, 2022) ("Plaintiff must rely [on the class-of-one theory] because disability is not a suspect classification under the Equal Protection Clause."); *Alexander v. Cent. Islip Sch. Dist.*, No. 18-CV-2521, 2021 WL 4340730, at *6 (E.D.N.Y. Sept. 22, 2021) ("[D]isability is not a protected classification under the Equal Protection Clause."); *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) (rejecting Equal Protection claim because "freedom from discrimination on the basis of disability is a right secured by statute . . . not by the Constitution").

above, and concede that they have not alleged the existence of any similarly situated comparators, let alone "an extremely high degree of similarity between themselves and the persons to whom they compare themselves," *Levine v. N.Y. State Police*, No. 21-CV-1181, 2022 WL 1987845, at *11 (N.D.N.Y. June 6, 2022); *see Robinson v. Butrisk*, No. 21-CV-50, 2021 WL 1978703, at *7 (D. Conn. May 17, 2021) ("To succeed on . . . a [class-of-one] claim, plaintiffs must show an extremely high degree of similarity between themselves and the persons to who they compare themselves; in other words, such a plaintiff must be *prima facie* identical to the persons alleged to receive irrationally different treatment.").

That failure is fatal to their Equal Protection claim.  *See, e.g.*, *Witt v. Vill. of Mamaroneck*, No. 12-CV-8778, 2015 WL 1427206, at *8-9 (S.D.N.Y. Mar. 27, 2015) (dismissing class-of-one equal protection claim where Plaintiffs were "unable to identify materially similar, let alone identical comparators"); *Camac v. Long Beach City Sch. Dist.*, No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing class-of-one equal protection claim because "there is no question that Plaintiffs have failed to allege the existence of similarly situated comparators."); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing class-of-one equal protection claim where "the Complaint does not identify any comparators or similarly situated entities at all"); *Bishop v. Best Buy, Co. Inc.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (dismissing class-of-one equal protection claim where "Plaintiff has failed to allege or identify a single similarly situated individual who was treated differently by the . . . [d]efendants."), *aff'd sub nom.*, *Bishop v. City of N.Y.*, 518 F. App'x 55 (2d Cir. 2013) (summary order).[12]

---

[12] The Court recognizes that the pleading standard for a class-of-one claim is difficult to meet. *See Benjamin v. Town of Islip*, No. 20-CV-56, 2022 WL 1090608, at *2 (E.D.N.Y. Apr.

Accordingly, Plaintiffs' equal protection claim must be dismissed.

**B.** *__Monell__* **Claim**

Plaintiffs separately maintain that the District itself is liable for the constitutional torts of the Individual Defendants. (*See* AC ¶¶ 104-108.) "Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom."[13] *Schuyler v. City of New Rochelle*, No. 23-CV-4151, 2024 WL 167289, at *2 (S.D.N.Y Jan. 16, 2024); *see Biton v. City of N.Y.*, 416 F. Supp. 3d 244, 247 (E.D.N.Y. 2018) ("'A municipality can only be held liable for a violation under § 1983, known as *Monell* liability, if its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, a plaintiff seeking to hold a municipality liable under *Monell* must show: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 140 (2d Cir. 2010); *see Green v. City of Mount Vernon*, No. 22-CV-8554, 2024 WL 710191, at *2 (S.D.N.Y. Feb. 21, 2024).

The municipal liability claim here fails at the threshold, because there can be no *Monell* liability absent an underlying constitutional violation. *See, e.g.*, *Fappiano v. City of N.Y.*, 640 F. App'x 115, 121 (2d Cir. 2016) (summary order) ("[I]n the absence of an underlying

_____

12, 2022) ("Plausibly pleading a class-of-one claim is not . . . an easy task."). That is because "[t]he 'class of one' exception stands as a narrow exception to the requirement that a plaintiff plead that he or she is a member of a protected class to state an equal protection claim." *Marchman v. Crawford*, 237 F. Supp. 3d 408, 433 (W.D. La. 2017), *aff'd*, 726 F. App'x 978 (5th Cir. 2018) (*per curiam*).

[13] School districts are considered municipalities for the purposes of § 1983 and *Monell* claims. *See Nagle v. Marron*, 633 F.3d 100, 116 (2d Cir. 2011); *J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*, No. 17-CV-7150, 2024 WL 2700563, at *7 (S.D.N.Y. May 24, 2024).

16

constitutional violation by a [municipal] employee there is no municipal liability under

*Monell*."); *Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013) (district court correctly determined

that municipality "cannot be liable under *Monell* where Plaintiff cannot establish a violation of

his constitutional rights."); *Vasquez v. County of Rockland*, No. 13-CV-5632, 2020 WL 883514,

at *7 (S.D.N.Y. Feb. 24, 2020) ("Failure to establish an underlying constitutional violation

necessarily defeats a *Monell* claim.") (collecting cases); *DeRaffele v. City of New Rochelle*, No.

15-CV-282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) ("It is well established that a

*Monell* claim cannot lie in the absence of an underlying constitutional violation.") (collecting

cases).

Plaintiffs here have failed to establish their equal protection claim for the reasons detailed

above.  Accordingly, their *Monell* claim necessarily fails and must be dismissed as well.[14]

## C.    Rehabilitation Act and ADA Claims[15]

"The ADA provides that 'no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity.'"  *P.C.R. v.*

---

[14] Plaintiffs' argument that their *Monell* claim is viable because it hinges on "deliberate indifference through . . . training and supervision practices," (Ps' Op. at 23; *see id.* at 26 (alleging that the District "failed to adequately train, oversee, manage, and supervise those responsible for the direct care of the [P]laintiffs")), does not alter this outcome, as "*Monell* does not provide a separate cause of action for the failure by [a municipality] to train its employees; it *extends* liability to a municipal organization where that organizations' failure to train . . . led to an independent constitutional violation," *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original); *see Barrett v. City of Newburgh*, No. 13-CV-4118, 2014 WL 1092176, at *4 (S.D.N.Y. Mar. 18, 2014) ("[I]n the absence of an underlying constitutional violation, a municipality cannot be held liable for failure to train under *Monell*.").

[15] As there is no individual liability under the ADA or Section 504, *see Johnson v. Goord*, No. 01-CV-9587, 2004 WL 2199500, at *19 ("[T]here can be no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act.") (collecting cases), Plaintiffs bring these claims only against the District.

17

*Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2022 WL 337072, at \*26 (S.D.N.Y. Feb. 4, 2022)

(quoting 42 U.S.C. § 12132). "Similarly, the Rehabilitation Act states, 'no otherwise qualified

individual with a disability shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance.'" *Monterroso v. City of N.Y.*, No. 22-CV-7142,

2024 WL 360816, at \*3 (S.D.N.Y. Jan. 31, 2024) (quoting 29 U.S.C. § 794(a)).

"The standards set forth in both Title II of the ADA and Section 504 of the Rehabilitation

Act are generally the same and thus, the Second Circuit treats claims under the two statutes

identically." *Hendrix v. Annucci*, No. 20-CV-743, 2021 WL 4405977, at \*10 (N.D.N.Y. Sept.

27, 2021); *see P.C.R.*, 2022 WL 337072, at \*26 ("As the standards for actions under these

provisions of the ADA and Section 504 are generally equivalent, courts in the Second Circuit

frequently analyze such claims together."). Thus

> [t]o assert a claim under the ADA or the Rehabilitation Act for discrimination in
> public services, a plaintiff must demonstrate that (1) she is a qualified individual
> with a disability, (2) the defendant is subject to the ADA or the Rehabilitation
> Act, and (3) she was denied the opportunity to participate in or benefit from the
> defendant's services, programs, or activities, or was otherwise discriminated
> against by the defendant because of her disability.

*GLD by GD v. City of N.Y.*, No. 19-CV-4314, 2020 WL 5076824, at \*2 (S.D.N.Y. Aug. 27,

2020); *see Monterroso*, 2024 WL 360816, at \*3.

"In cases brought under the Rehabilitation Act and the ADA for harms caused by school

bullying, district courts in this Circuit have applied the three-part test developed in *Davis v.*

*Monroe*, 526 U.S. 629, 650 (1999), to determine whether schools are liable for peer-to-peer

harassment." *T.J. ex rel. B.W. v. Bd. of Educ. of Mt. Vernon City Sch. Dist.*, No. 17-CV-9592,

2019 WL 13170168, at \*13 (S.D.N.Y. Sept. 30, 2019) (collecting cases); *see Eskenazi-*

*McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 232 (E.D.N.Y. 2015) (While

"[s]chool district liability for peer-to-peer disability-based harassment under Section 504 and the ADA has not been directly addressed by the United States Supreme Court or the Second Circuit," "[c]ourts in the Second Circuit and elsewhere have subsequently applied the Supreme Court's holding in *Davis* to peer-on-peer harassment cases under the ADA and Section 504.").

"Under that test, individual defendants need not be, themselves, motivated by discriminatory animus:  rather, liability for discrimination may be imputed to teachers and administrators for students' peer-on-peer harassment where those defendants displayed 'deliberate indifference' to the underlying harassment, where the harassment is itself motivated by discriminatory animus." *T.J.*, 2019 WL 13170168, at \*14; *see Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 241 (W.D.N.Y. 2012).[16]  To succeed on such a deliberate indifference claim, "a plaintiff must show that (1) he was harassed on the basis of his disability; (2) the harassment was so severe, pervasive, and objectively offensive that it altered his education; (3) the school district had actual notice of the disability-based harassment; and (4) the school was deliberately indifferent to it." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476, 2022 WL 1557053, at \*8 (W.D.N.Y. May 17, 2022); *see Dale v. Suffern Cent. Sch. Dist.*, No. 18-CV-4432, 2023 WL 6386808, at \*12 (S.D.N.Y. Sept. 28, 2023).

---

[16] The *Davis* test originated in the Title IX context, *see K.M. ex rel. D.G. v. Hyde Park Cent Sch. Dist.*, 381 F. Supp. 2d 343, 359-360 (S.D.N.Y. 2005), but the Second Circuit has since "endorsed the *Davis* framework in cases of third-party harassment outside the scope of Title IX," *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.10 (2d Cir. 2012) (case involving racial harassment).  Some of those cases – such ones involving equal protection claims – implicate individual liability, and thus the test has occasionally been framed as turning on the response of an individual rather than the school or school district.  *See, e.g.*, *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) ("The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself.  Thus, to establish a violation of the Equal Protection Clause or § 1981, a plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur.").  The *Davis* test is nevertheless applicable in the ADA/Section 504 context, where the defendant is the District as a whole.

Deliberate indifference to bullying under *Davis* is found where the District's response "was 'so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur.'" *Spring*, 2022 WL 1557053, at *14 (quoting *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012)); *see Preston*, 876 F. Supp. 2d at 242 (assessing ADA and Section 504 disability discrimination claims and noting "[i]n applying *Davis* [to an equal protection claim], the Second Circuit has observed that a school's liability for harassment by and against students may be established where the defendant's indifference was such that the defendant intended the discrimination . . . to occur.  It is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination . . . .  Instead, deliberate indifference can be found when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances."); *see also Zeno*, 702 F.3d at 666 (applying *Davis* to Title VI student-on-student harassment claim and noting that "[a] finding of deliberate indifference depends on the adequacy of a school district's response to the harassment" and that "a school district's actions are only deliberately indifferent if they were clearly unreasonable in light of the known circumstances.").

The parties dispute whether the AC satisfies the first prong of the test and sufficiently alleges that the Infant Plaintiffs were bullied because of their disabilities.  (*See* Ds' Mem. at 14-15; Ps' Opp. at 28.)  I need not resolve that dispute, however, because the allegations in the AC fail on the fourth prong of the test.  Simply put, Plaintiffs have alleged no facts from which it can be plausibly inferred that Defendants were deliberately indifferent to the bullying experienced by the Infant Plaintiffs.  To the contrary, there is no allegation that any District employee was aware of the bullying until Friday, March 11, 2022, (*see* Kroll Report at 4 ("Kroll did not uncover any evidence that the . . . administration had received notice or knew of the misconduct prior to

20

March 11, 2022."); *id.* at 37 ("Kroll found no evidence that the . . . administration had received notice or knew of the misconduct prior to March 11, 2022."), when Downes was informed and, along with special education colleagues, took "prompt steps . . . to strengthen the protocols around the supervision of special education students in the boys' bathroom to ensure similar acts affecting their security and privacy would not recur," (AC ¶ 73; *see* Kroll Report at 4 ("The special education staff responded to the [March 11] report of misconduct promptly, thoughtfully, and comprehensively.")). Such steps included the implementation of new procedures on Monday, March 14 – the next school day – which, "in the weeks that followed . . . [were] adjusted and strengthened . . . further in consultation with the parents of [District] special education students." (Kroll Report at 9.)

Given these actions, the District's response was not "so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant[s] . . . intended for the harassment to occur." *Spring*, 2022 WL 1557053, at *14; *see T.J.*, 2019 WL 13170168, at *9 (applying *Davis* and dismissing equal protection claim where complaint failed to allege that defendants responded to bullying "in a way that was clearly unreasonable" where it alleged "numerous attempts . . . to rectify the situation," even though "th[o]se actions may not have been successful in preventing the bullying"); *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 196 (D. Conn. 2016) (holding that plaintiff "d[id] not sufficiently allege that the Board acted with deliberate indifference" because "[u]nlike . . . cases in which courts have denied motions to dismiss ADA and Section 504 claims, here, there was not a complete failure to address bullying," as the allegations "suggest[ed] that . . . school officials generally addressed [the bullying] by providing some support for [plaintiff] or disciplining the offending students."); *M.R. v. Burlington Area Sch. Dist.*, No. 21-CV-1284, 2023 WL 3510642, at *30-31 (E.D. Wis.

21

May 17, 2023) (applying *Davis* to equal protection claim and holding that defendant's "response was not so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that [defendant] himself intended for the harassment to occur" where defendant "promptly and appropriately investigated and responded to incidents of . . . harassment of which he was made aware").[17]

Plaintiffs do not allege that the bullying continued after March 11, 2022. Rather, the gravamen of their dissatisfaction with the District's response to the March 11 Incident is not that its steps did not protect the Infant Plaintiffs, but that the District did not promptly inform the parents of the incident, did not investigate aggressively enough, and did not keep them informed

---

[17] Courts in this Circuit have also recognized that claims under Section 504 and the ADA may be predicated on a claim that a disabled student was denied access to a free and appropriate public education ("FAPE"). *T.J.*, 2019 WL 13170168, at *14. Such claims are "distinct from a claim that the school discriminated against a child because of the child's disability by failing to respond to bullying" because the relevant "harm is the denial of the student's right, under the IDEA, to an appropriate education," rather than "the discriminatory bullying." *Id.*

A claim for denial of FAPE under Section 504 and the ADA requires "evidence that the defendant acted with bad faith or gross misjudgment." *Id.*; *see Vasquez v. N.Y.C. Dep't of Educ.*, No. 22-CV-3360, 2023 WL 2058773, at *6 (S.D.N.Y. Feb. 16, 2023) ("[A] Section 504 claim predicated on allegations of denial of a FAPE to a disabled student requires proof of bad faith or gross misjudgment."). That is because "the ADA and Section 504 address discrimination against disabled students, rather than failures to provide special education services," so a claim for a denial of a FAPE brought under those statutes requires "something more than a mere violation of the IDEA," and "[t]hat 'something more' is evidence that the defendant acted with bad faith or gross misjudgment." *T.J.*, 2019 WL 13170168, at *14.

Plaintiffs have failed to show that the District acted with bad faith or gross misjudgment for the reasons discussed above – namely, the prompt steps its personnel took shortly after the March 11 Incident to ensure the Infant Plaintiffs were protected from bullying and harassment when using the bathroom. *See T.J.*, 2019 WL 13170168, at *15 (dismissing ADA and Section 504 claims brought under denial of FAPE theory where Plaintiff "has alleged no facts that support a plausible inference that the School District acted with bad faith or gross misjudgment."); *see also C.L. v. Scarsdale Union Free Sch. Dist.*, No. 10-CV-4315, 2012 WL 983371, at *16 (S.D.N.Y. Mar. 22, 2012) ("Even if Defendant violated the IDEA by failing to provide [plaintiff] with a FAPE, without actual evidence of bad faith or gross misjudgment, this failure simply does not translate into a violation of the Rehabilitation Act."), *aff'd in relevant part*, 744 F.3d 826 (2d Cir. 2014).

as to the progress of the investigation.  (*See* AC ¶¶ 34-61.)  The Kroll Report indeed suggests that the investigation into which students were responsible for the March 11 Incident was deficient, particularly as to the failure to properly document investigative steps, the extent to which the investigation lacked coherent leadership, and the manner in which investigative findings were (or were not) reported to key constituencies.  (*See* Kroll Report at 37-44.)  While such deficiencies may reflect poorly on the Individual Defendants who conducted the investigation, they do not give rise to a plausible inference of deliberate indifference, as "the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it," *Davis*, 526 U.S. at 645, and there are no allegations in the AC that the Infant Plaintiffs experienced any further bullying after the March 11 Incident or that the investigative failures made the Infant Plaintiffs more vulnerable to bullying despite the improved bathroom procedures described above, (*see generally* AC; Kroll Report).  While Plaintiffs may plausibly allege negligence or even incompetence in conducting the investigation, they have not plausibly alleged that the District did so little to safeguard the Infant Plaintiffs so "as to give rise to a reasonable inference that [it] intended for the harassment to occur."  *DiStiso*, 691 F.3d at 241.

In sum, because Plaintiffs do not sufficiently allege that Defendants acted with deliberate indifference, their Section 504 and ADA claims must be dismissed.[18]

---

[18] I thus need not consider the parties' arguments as to whether monetary damages are available under Section 504 or the ADA.  *See, e.g.*, *Gibson v. Johnson & Johnson*, No. 22-CV-4383, 2023 WL 4672388, at *3 (E.D. Pa. July 19, 2023) ("Plaintiff fails to adequately plead a claim under the ADA and, therefore, the Court need not address his claims for compensatory damages."); *Wright v. Inch*, No. 18-CV-330, 2019 WL 1880151, at *4 n.6 (N.D. Fla. Mar. 25, 2019) ("Because Plaintiff failed to state an ADA claim, the Court need not address Defendants' argument regarding damages under the ADA."), *report and recommendation adopted*, 2019 WL 1877353 (N.D. Fla. Apr. 26, 2019); *Lewis v. Powers*, No. 15-CV-2692, 2018 WL 6268419, at

### D.   FERPA

Plaintiffs seek a declaratory judgment deeming Defendants in violation of FERPA.  (*See* P's Opp. at 29; AC at 23.)[19]

But as Defendants point out, (*see* Ds' Mem. at 20), "there is no private right of action under FERPA," *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947, 2006 WL 8440257, at *6 (E.D.N.Y. Sept. 15, 2006) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002)); *see Curto v. Smith*, 248 F. Supp. 2d 132, 142 (N.D.N.Y. 2003) ("Perhaps more fundamentally fatal to [plaintiff's] claim is that it states no legally cognizable injury" because "FERPA creates no private right of action and FERPA violations cannot be vindicated under § 1983."); *Papay v. Haselhuhn*, No. 07-CV-3858, 2010 WL 4140430, at *11 (S.D.N.Y. Oct. 21, 2010) ("FERPA does not create a private right of action that can be enforced through Section 1983.  Thus, Plaintiff does not have a federal right under FERPA.").[20]

_____

*11 (D. Colo. Nov. 30, 2018) ("[B]ecause I conclude that Plaintiff's ADA and Rehabilitation Act claims must be dismissed, I need not address [defendant's] argument that Plaintiff cannot recover compensatory damages for violation of either statute . . . .").

[19] Citations to pages in Plaintiffs' AC use the page numbers set by the Court's Electronic Case Filing System.

[20] That Plaintiffs seek a declaratory judgment that Defendants violated FERPA – rather than damages – is irrelevant.  (See Ps' Opp. at 29 ("[P]laintiffs are not seeking monetary damages but a declaratory judgment stating that the defendants are in violation of FERPA.").)  The Declaratory Judgment Act, 28 U.S.C. § 2201, ("DJA") "is procedural only and does not create an independent cause of action," so "the DJA cannot create legal rights that do not otherwise exist." *Magnoni v. Plainedge Union Free Sch. Dist.*, No. 17-CV-4043, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018); *see Knox v. Ironshore Indem. Inc.*, No. 20-CV-4401, 2021 WL 256948, at *4 (S.D.N.Y. Jan. 26, 2021).  Plaintiffs thus cannot use their request for a declaratory judgment to create an individual right of action under FERPA that does not otherwise exist.  *See Magnoni*, 2017 WL 4017585, at *7 ("As FERPA does not provide an individual right of action, the DJA cannot expand FERPA by doing so.  Even though the DJA provides that a court may grant a declaratory judgment even if no further relief could be sought, the precedent is clear; the DJA cannot create an individual right of action under FERPA if one does not exist."); *see also Marin v. Ovitt*, No. 22-CV-631, 2022 WL 17216818, at *8 (C.D. Cal. Nov. 1, 2022)

24

Accordingly, Plaintiffs' FERPA claim must be dismissed.

E.    **IDEA**

Plaintiffs' ninth cause of action seeks monetary damages and a declaratory judgment in connection with Defendants' alleged failure to implement individualized education plans ("IEP"s) and behavioral intervention plans ("BIP"s) for the Infant Plaintiffs in violation of the IDEA.  (*See* AC ¶ 148; *id.* at 22-23.)

"The IDEA was created to provide disabled students with a free appropriate public education [("FAPE")] in the least restrictive environment suitable for their needs." *Piotrowski v. Rocky Point Union Free Sch. Dist.*, 462 F. Supp. 3d 270, 283 (E.D.N.Y. 2020).  "The IDEA calls for an 'individualized education program' (IEP) to function as the primary vehicle for providing each child with the promised FAPE." *Harden v. Buffalo Pub. Sch. Dist.*, No. 15-CV-646, 2018 WL 3537070, at *2 (W.D.N.Y. July 23, 2018).  "Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a requirement that plaintiffs first exhaust administrative remedies." *S.W. v. Warren*, 528 F. Supp. 2d 282, 292 (S.D.N.Y. 2015); *see Harden*, 2018 WL 3537070, at *2 ("If a dispute arises regarding any aspect of a child's FAPE, the IDEA contains administrative procedures through which parents may resolve those disputes.").

Plaintiffs' IDEA claim is not viable for several reasons.  First, insofar as their IDEA claim is brought against the Individual Defendants, it must be dismissed "because [the] IDEA does not provide for individual liability." *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No.

---

("Plaintiff attempts to bring a claim against Defendants for violating FERPA, seeking a declaratory judgment, an injunction, and damages.  Because FERPA does not confer a private right of action, Plaintiff cannot maintain an action against Defendants for alleged FERPA violations.").

10-CV-1985, 2011 WL 941263, at *5 (E.D.N.Y. Mar. 15, 2011); *see Killoran ex rel. Killoran v. Westhampton Beach Sch. Dist.*, No. 20-CV-4121, 2022 WL 866816, at *6 n.8 (E.D.N.Y. Mar. 22, 2022) ("Plaintiff's IDEA claim against the individual defendants is dismissed for the additional reason that there is no individual liability under the IDEA."); *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *42 (S.D.N.Y. Mar. 29, 2019) (dismissing IDEA claims against school district employees "[b]ecause there is no individual liability under the IDEA . . . .") (collecting cases).

Next, Plaintiffs' IDEA claim must be dismissed insofar as it seeks compensatory damages because "compensatory damages are unavailable under the IDEA." *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 (2d Cir. 2024); *see Vazquez ex rel. J.V. v. N.Y.C. Dep't of Educ.*, No. 22-CV-3360, 2024 WL 1332822, at *4 (S.D.N.Y. Mar. 28, 2024) ("Plaintiff seeks only backwards-looking compensatory damages, which is a form of relief . . . IDEA does not provide."); *Robinson v. Dep't of Educ.*, 20-CV-3388, 2021 WL 12227103, at *7 (E.D.N.Y. Sept. 29, 2021) ("Defendant is entirely correct in noting that courts may not award money damages for violations of the IDEA.").

Finally, Plaintiffs' suggestion that *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023) eliminated the IDEA's exhaustion requirement rests on a flawed reading of that case. (*See* Ps' Opp. at 30-31.) *Perez* plainly held that the IDEA's exhaustion requirement does not apply insofar as "a plaintiff brings a suit under *another federal law* for compensatory damages – a form of relief . . . IDEA does not provide," 595 U.S. at 147-48 (emphasis added), but does apply if a "plaintiff seeks relief for the denial of a [FAPE] because that is the only relief IDEA's administrative processes can supply," *id.* at 149. *Perez* thus left untouched the "well-settled [requirement] that, prior to bringing a suit in federal court under the IDEA, plaintiffs must

26

exhaust all available administrative procedures." *Rutherford*, 2019 WL 1437823, at *21 (collecting cases).[21]

Accordingly, Plaintiffs' claim "[t]hat Defendants failed to implement each of the Plaintiffs' individualized education plans and attendant behavioral intervention plan[s] in violation of [the IDEA]," (AC at 22), fails in light of their failure to exhaust their administrative remedies, *see B.C. v. Mount Vernon Sch. Dist.*, 660 F. App'x 93, 96 (2d Cir. 2016) ("Before bringing a civil action in federal or state court based on an alleged violation of the IDEA, an aggrieved party must exhaust all administrative remedies."); *Coleman v. Prince George's Cnty. Bd. of Educ.*, No. 21-CV-68, 2023 WL 4483594, at *2 (D. Md. June 2, 2023) ("To the extent that [plaintiff] asserts an IDEA claim on his granddaughter's behalf seeking enforcement of her IEP . . . such claims must be dismissed for failure to exhaust. A parent or other guardian seeking to enforce their children's rights under the IDEA must exhaust administrative remedies before they may file suit in federal court.").[22]

Plaintiffs' IDEA claim must therefore be dismissed.[23]

---

[21] The Supreme Court's decision in *Perez* does, however, mean that the IDEA's exhaustion requirements are not applicable to Plaintiffs' ADA and Section 504 claims, as those claims concern different statutes and seek compensatory damages, a form of relief that the IDEA does not provide. *See Simmons v. Murphy*, No. 23-288, 2024 WL 2837625, at *3-4 (2d Cir. June 5, 2024) (holding that in light of *Perez*. which narrowed the circumstances in which IDEA exhaustion applies to other federal statutes, district court erroneously determined that Plaintiff was required to exhaust administrative remedies under the IDEA prior to bringing ADA, Section 504, and § 1983 claims). As noted above, however, the ADA and Section 504 claims fail for different reasons.

[22] The wisdom of the administrative exhaustion requirement is illustrated by the AC in this case, which claims an IDEA violation based on failure to implement the Infant Plaintiffs' IEPs and BIPs, but provides no facts regarding the content of the IEPs or BIPs or any respects in which they were not implemented.

[23] Because all of Plaintiffs' federal claims fail on the merits, the Court need not address the parties' arguments concerning qualified immunity. *See Swanhart v. N.Y.*, No. 20-CV-6819,

\*   \*   \*

The Court does not mean to suggest that what happened to the Infant Plaintiffs was acceptable; it was not.  The Court also does not mean to suggest that the parents have no grounds to criticize the District's handling of the investigation; they do.  But the law does not provide a federal remedy for every wrong, and therefore the Court is constrained to dismiss the federal claims alleged here.

### F.   Service of Process

Because all of Plaintiffs' federal claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim, the Court need not reach the parties' Rule 12(b)(5) arguments concerning insufficient service of process on Miller, Adelberg, Dormady, and Escobar.  *See, e.g.*, *Harrigan v. City of N.Y.*, No. 19-CV-3489, 2020 WL 2555307, at \*2 n.2 (S.D.N.Y. May 20, 2020) ("Because the Court dismisses the claims on 12(b)(6) grounds, it need not address . . . [Rule] 12(b)(5)"); *Taylor v. Westor Cap. Grp.*, 943 F. Supp. 2d 397, 400 (S.D.N.Y. 2013) ("[D]ismissal under Rule 12(b)(6) renders unnecessary any further consideration of the parties' dispute over service of process under Rule 12(b)(5).") (collecting cases); *Jenkins v. Haaland*, No. 21-CV-385, 2022 WL 1913918, at \*4 (D. Utah Apr. 28, 2022) ("Because Plaintiffs' claims are subject to dismissal on other grounds, the court need not address whether their claims should also be dismissed for insufficient service [under] Rule 12(b)(5)."), *report and recommendation adopted*, 2022 WL 1912245 (D. Utah June 3, 2022); *Leeper v. Healthscope Benefits*, No. 19-CV-5401, 2020 WL 1290089, at \*12 (S.D. Ohio Mar. 18, 2020) ("The Court

---

2022 WL 875846, at \*12 (S.D.N.Y. Mar. 24, 2022) ("[A]s all of Plaintiffs' federal claims against Defendants fail, the Court need not address Defendants' arguments on qualified immunity."); *Daniels v. Murphy*, No. 06-CV-5841, 2007 WL 1965303, at \*5 (E.D.N.Y. July 2, 2007) ("Here, because the Court found . . . that plaintiff's complaint fails to sufficiently allege a federal claim, the Court need not address the issue of qualified immunity . . . .").

need not address Defendants['] motion to dismiss for improper service under Rule 12(b)(5) for each claim is dismissed for failure to state a claim under 12(b)(6).").

### G.   Supplemental Jurisdiction

"[T]he traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state-law claims where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see Grace Int'l Assembly of God v. Festa*, No. 17-CV-7090, 2019 WL 1369000, at *9 (E.D.N.Y. Mar. 26, 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."), *aff'd*, 797 F. App'x 603 (2d Cir. 2019) (summary order).

Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are dismissed without prejudice.

### H.   Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Because most of "[t]he problems with the dismissed claims are substantive" and "better pleading will not cure them," *Leschak v. Raiseworks, LLC*, No. 14-CV-8072, 2016 WL 11695068, at *10 (S.D.N.Y. Mar. 7, 2016), amendment would largely be futile, *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019); *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021); *Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases).

Moreover, Plaintiffs have already amended their Complaint once, after receiving a pre-motion letter outlining the grounds on which Defendants planned to move, (*see* ECF No. 37), and hearing the Court's observations during the subsequent pre-motion conference, (*see* Minute Entry dated Sept. 8, 2023).  Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per*

30

*curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court").

Accordingly, the Court declines to grant Plaintiffs leave to amend *sua sponte*.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Plaintiffs' federal claims (Equal Protection, ADA, Section 504, FERPA, and IDEA) are dismissed with prejudice.  Plaintiffs' state law claims for negligence, violations of the NYSHRL, negligent hiring, training and supervision, and violation of the New York Civil Rights Law are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 42), and close the case.

**SO ORDERED.**

Dated:  July 16, 2024
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

31